IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| CHARLES TWAIN BRANDE, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) 1:21CV48 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Charles Twain Brande ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on May 31, 2019, alleging a disability onset date of October 1, 2017 in both applications. (Tr. at 18, 236-47.)[1]  His applications were denied initially (Tr. at 103-14, 137-47) and upon reconsideration (Tr. at 115-

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

28). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 167-68.) On July 31, 2020, Plaintiff, along with his attorney, attended the subsequent telephonic hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 18, 33, 35.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 28), and, on December 7, 2020, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

2

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. The ALJ therefore concluded that Plaintiff met his burden at step one of the sequential evaluation process. (Tr. at 21.) At step two, the ALJ further identified obesity as Plaintiff's only severe impairment. (Tr. at 21). She also identified obstructive sleep apnea and "idiopathic edema" as non-severe impairments. (Tr. at 21.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 23.) Therefore, the ALJ assessed Plaintiff's RFC and determined that he could perform the full range of medium work. (Tr. at 23.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff remained capable of performing his past relevant work as a custodian, field investigator, antique furniture salesperson, and restaurant manager. (Tr. at 25-26.) In

5

Case 1:21-cv-00048-LCB-JEP   Document 16   Filed 08/24/22   Page 5 of 16

addition, the ALJ made an alternative finding at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, he could perform other jobs available in significant numbers in the national economy, including several unskilled sedentary jobs set out in the administrative decision. (Tr. at 26-27.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 27-28.)

Plaintiff now raises four challenges to the ALJ's decision. Plaintiff first contends that "new medical evidence require[s] a remand to the Commissioner under sentence six of 42 U.S.C. § 405(g) for a rehearing and consideration of new and material evidence." (Pl.'s Br. [Doc. #12] at 2.) In addition, he argues that the ALJ (1) failed to properly consider the reasons for his minimal medical treatment, and (2) failed "to build an accurate and logical bridge from the evidence to her conclusion[s]" regarding the effect of Plaintiff's obesity and diuretic use on his RFC, and (3) relied on an "incorrect regulatory framework" to assess Plaintiff's RFC. (Pl.'s Br. at 2-4.)[4] After a careful review of the entire record, the Court finds that none of Plaintiff's contentions merit remand.

A. New and Material Evidence

Plaintiff first seeks a sentence six remand based on forty-eight pages of treatment notes submitted for the first time to this Court. However, as Defendant correctly notes, "where extra-record evidence is presented for the first time to the district court, sentence six of 42 U.S.C. § 405(g) allows for remand only if stringent criteria are met." (Def.'s Br. [Doc. #14] at 7) (citing Melkonyan v. Sullivan, 501 U.S. 89, 100 (1991) ("Congress made it unmistakably clear that it intended to limit the power of district courts to order remands for 'new evidence'

---

[4] Plaintiff presents these arguments in a different order and addresses his obesity and diuretic use separately.

in Social Security cases.")). Court can remand the case under sentence six of 42 U.S.C. § 405(g) for the Commissioner to consider the new evidence, if Plaintiff can demonstrate that the evidence qualifies as both new and material, and that good cause exists for the failure to submit the evidence to the ALJ or the Appeals Council. See <u>Wilkins v. Secretary, Dep't of Health & Human Servs.</u>, 953 F.2d 93, 96 n.3 (4th Cir. 1991). Section 405(g) provides as follows:

> [A federal district court] may at any time order additional evidence to be taken before the Commissioner [], but <u>only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding</u>; and the Commissioner [] shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g) (emphasis added). "Evidence is new within the meaning of [§ 405(g)] if it is not duplicative or cumulative" and "is material if there is a reasonable possibility that the new evidence would have changed the outcome." <u>Wilkins</u>, 953 F.2d at 96. The Fourth Circuit has recognized four requirements that a claimant seeking a sentence six remand must satisfy:

> First, the claimant must demonstrate that the new evidence is relevant to the determination of disability at the time the claimant first applied for benefits and is not merely cumulative of evidence already on the record. <u>Borders v. Heckler</u>, 777 F.2d 954, 955 (4th Cir.1985) (citing <u>Mitchell v. Schweiker</u>, 699 F.2d 185, 188 (4th Cir.1983)). Second, the claimant must establish that the evidence is material, in that the Commissioner's decision "'might reasonably have been different' had the new evidence been before her." <u>Id.</u> (quoting <u>King v. Califano</u>, 599 F.2d 597, 599 (4th Cir.1979)). Third, the claimant must show that good cause exists for her failure to present the evidence earlier. <u>Id.</u> And fourth, the claimant must present to the reviewing court "'at least a general showing of the nature' of the new evidence." <u>Id.</u>

7

Case 1:21-cv-00048-LCB-JEP   Document 16   Filed 08/24/22   Page 7 of 16

Finney v. Colvin, 637 F. App'x 711, 715-16 (4th Cir. 2016). Implicit in the requirement of materiality is the requirement that the new evidence must relate to the time period previously considered by the ALJ. See, e.g., Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir.1991); see also Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir.1984) (explaining that, to warrant a Sentence six remand, the new evidence must "relate to the time period for which benefits were denied," and not be merely probative "of a later-acquired disability or of the subsequent deterioration of [a] previously non-disabling condition").

In the present case, Plaintiff submitted treatment notes dated January to June 2021. ([Doc. #12-1].) All of these records post-date both the ALJ's September 2020 decision and the Appeals Council's December 2020 Denial of Review. (See [Doc. #12-1]; Tr. at 1, 28.) While this evidence is "new" in the sense that it was not available, and indeed did not exist, at the time of Plaintiff's administrative proceedings, it fails to meet the materiality requirement because these records do not relate to the time period prior to the ALJ's decision. As Defendant correctly relates, the newly-submitted records show as follows:

> Plaintiff established as a new patient at Wake Forest Health Network; was newly diagnosed with diabetes (which was stable with treatment); sought bariatric treatment for his morbid obesity; and began Torsemide for anasarca (generalized body swelling), which his provider felt could be related to weight-induced lipidemia. . . . Examinations generally showed that despite his obesity and some findings of edema (at times mild), Plaintiff had normal muscle strength, tone, sensation, and reflexes, no atrophy or abnormal movements, and no focal motor or sensory deficits.

(Def.'s Br. at 8-9 (citing [Doc. #12-1] at 7, 16, 20, 28, 29, 48).) Plaintiff now contends that his diagnosis with anasarca provides "the missing documentation of swelling in multiple parts of [his] body." (Pl.'s Br. at 10.) In particular, he argues that the records support his related testimony "that he must elevate his legs above heart level for 15 to 20 minutes several times a

8

day in an effort to relieve swelling in his legs." (Pl.'s Br. at 10.) However, none of the records Plaintiff provides recommend leg elevation at all, let alone to the extent Plaintiff suggests. (See generally [Doc. #12-1].) Instead, Plaintiff was advised to manage his edema through weight management and continued diuretic use. (See, e.g., Doc. [#12-1] at 35-36.) In addition, the records specifically note that Plaintiff sought additional treatment due to "[w]orsening swelling in his bilateral lower extremities and up to his waist and abdomen" ([Doc. #12-1] at 5), rather than for continued management of this condition as it existed during the relevant time period. Thus, the evidence reflects that Plaintiff sought additional treatment for subsequent deterioration of his condition, and the evidence is not material because it does not relate to the relevant time period prior to the ALJ's decision. Moreover, as noted by Defendant, there is no basis to find that the decision "might reasonably have been different" had the new evidence been before the agency, given the conclusion in the records that despite his edema and obesity, Plaintiff had normal muscle strength, tone, sensation, ad reflexes, no atrophy or abnormal movements, and no focal motor or sensory deficits. (See [Doc. #12-1] at 7, 16, 20, 28, 39, 48).[5]

B. Minimal Medical Treatment

Plaintiff next contends that the ALJ failed to properly consider the reasons for Plaintiff's minimal medical treatment. As courts in this District have noted,

---

[5] The Court also notes that Plaintiff did visit a medical provider in June 2020 (Tr. at 366), and the record of that visit was before the ALJ, so this is not a case where there are no medical records or examinations for the relevant time period. Moreover, at the hearing counsel for Plaintiff confirmed that the record was complete, and Plaintiff has not shown why he couldn't have visited this new medical provider and obtained the evaluations prior to the hearing before the ALJ. In addition, and of particular note, Plaintiff failed to respond and cooperate in requests to obtain a Consultative Examination during the administrative process. (Tr. at 24, 99, 118.) In the circumstances, Plaintiff has not shown good cause for failing to obtain these evaluations and records during the administrative process.

9

"[a] claimant may not be penalized for failing to seek treatment he cannot afford; 'it flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'" [Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986)] (quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)). Social Security Ruling 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p") provides that:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment. . . . For example:
>    . . .
> The individual may be unable to afford treatment and may not have access to free or low-cost medical services.

SSR 96-7p, 1996 WL 374186, at *7-8 (emphasis added). However, even if a claimant cannot afford medical treatment, he must "show that he has exhausted all free or subsidized sources of treatment and document his financial circumstances before inability to pay will be considered good cause." Gordon, 725 F.2d at 237.

Kirkland v. Colvin, No. 1:15CV00086, 2016 WL 126754, at *7 (M.D.N.C. Jan. 11, 2016).

In the present case, the ALJ explained that

> [Plaintiff] sought minimal treatment over the period in question, and the degree of symptoms and limitations alleged are significantly out of proportion to the treatment he has sought. The medical record confirms that [Plaintiff] has remained obese over the period in question, and it does reflect a history of sleep apnea. However, the medical record contains few abnormal findings that support or are consistent with [Plaintiff's] alleged fatigue, weakness, or mobility deficits.

(Tr. at 24.) The ALJ further noted that, prior to Plaintiff's June 12, 2020 appointment with his provider, he had received no medical treatment for a year, and his prior contact consisted of calling his doctor about applying for disability. (Tr. at 24, 363, 366.) The ALJ found this

10

Case 1:21-cv-00048-LCB-JEP   Document 16   Filed 08/24/22   Page 10 of 16

lack of treatment particularly notable given Plaintiff's actual and planned work during his alleged disability period. (Tr. at 24.)

Plaintiff, in turn, now argues that the ALJ should have asked why Plaintiff failed to obtain more frequent treatment. However, when presented with Plaintiff's testimony that he lacked health insurance and sufficient funds throughout much of the period at issue, the ALJ specifically asked if Plaintiff had "looked into any free clinics or anything like that." (Tr. at 54.) Plaintiff responded that he had not. (Tr. at 54.) Thus, Plaintiff was given an opportunity to provide an explanation but did not do so, and did not make any showing that he had exhausted free or subsidized sources of treatment. See Kirkland, 2016 WL 126754, at *7; see also Cummings v. Colvin, No. 1:14CV520. 2016 WL 698081, at *7 (M.D.N.C. Feb. 19, 2016) (finding that the ALJ did not err in relying on plaintiff's lack of treatment where plaintiff offered no evidence of attempts to obtain free or low-cost treatment).

In addition, the ALJ specifically noted that Plaintiff did report working that would have provided a source of income, and reported other similar activities that were inconsistent with the alleged claims of disability:

> The minimal treatment the [Plaintiff] sought is particularly notable, given the fact that he had been working during part of the period at issue and therefore had a source of some income. It is also notable that he has told his doctor that he dozed off at work while driving, yet on his 2019 tax return he reported having driven over 20K miles on his vehicle for business since June 28, 2019.
> . . . .
>
> [W]hile [Plaintiff] testified he could not even walk to the door of a grocery store without his legs giving out, such extreme functional limitation is inconsistent with [Plaintiff's] efforts to seek medical treatment.
>
> The [Plaintiff] has worked since the alleged onset date of disability on October 1, 2017, and his statements have been vague and inconsistent about what that work involved and how extensive it was. His 2019 income tax return shows

11

> gross receipts of $6,000 for his Southernpotz business, and his testimony was unclear as to whether this was his antique business or the "illegal" accounts payable and receivables business he was briefly engaged in for someone else. Significantly, he also testified that were it not for the pandemic, he was planning to accept a job as a restaurant manager in New Jersey. Such actually and planned work activity is inconsistent with the degree of limitation alleged.

(Tr. at 24). Thus, the record reflects that the ALJ allowed Plaintiff an opportunity to explain, confirmed that Plaintiff had not even sought, let alone exhausted, any free or subsidized treatment, confirmed that Plaintiff had been working with some sources of income, and in the circumstances reasonably took into account the nature and extent of Plaintiff's treatment, which was inconsistent with the alleged limitations.

C. RFC Determination

Plaintiff also contends that substantial evidence does not support the ALJ's decision because the ALJ failed to take into account or adequately explain the effect of Plaintiff's obesity and diuretic use on his RFC. With regard to Plaintiff's obesity, the record reflects that Plaintiff remained morbidly obese, with a BMI in excess of 60, throughout the period in question. (Tr. at 24, 346, 364, 366.) However, the ALJ further related that Plaintiff's treatment records failed to document any abnormal findings relating to his obesity. (Tr. at 25.) As noted by the ALJ, "the treatment records document no findings or abnormalities related to [Plaintiff's] gait, coordination, muscle strength, sensation, or reflexes." (Tr. at 25.) Moreover, the record lacks any medical opinion evidence suggesting limitations, as Plaintiff "did not cooperate with agency efforts to arrange for him to attend a consultative examination." (Tr. at 24.) Nevertheless, it appears that the ALJ gave Plaintiff the benefit of the doubt in finding that, "due to his obesity," Plaintiff was "limited to medium exertional level" work. (Tr. at 25.) Although Plaintiff now argues that the ALJ failed to adequately explain how this limitation

12

accounted for Plaintiff's obesity, he fails to identify any evidence that his obesity resulted in further limitations, exertional or non-exertional, during the relevant period.[6]

In finding that Plaintiff's obesity was not as limiting as he alleged, the ALJ further explained that Plaintiff's actual and planned work activity during the period he claimed to be disabled undermined his allegations. (Tr. at 24.) As set out above, the ALJ recounted Plaintiff's testimony that he was planning to take a new job as a restaurant manager in New Jersey, and ultimately did not do so solely because of the pandemic, rather than because of his impairments. (Tr. at 24, 56, 57, 76-78, 265.) The ALJ also noted Plaintiff's other work activities, and his failure to obtain medical treatment, both of which were inconsistent with the extreme limitations alleged. (Tr. at 24.)

The ALJ relied on similar reasoning to discount the need for further limitations relating to Plaintiff's edema and related diuretic use. At step two of the sequential analysis, the ALJ specifically considered whether Plaintiff's edema constituted a severe impairment. In particular, she found that,

> [o]n one occasion prior to the alleged onset date of disability, [Plaintiff] was noted to have "idiopathic edema" (Exhibit 1F/4), and the record does indicate [that Plaintiff] took "fluid pills" and called his doctor on a few occasions about this concern after the alleged onset date (Exhibits 1F, 4F, 5F). However, given the infrequency of [Plaintiff's] efforts to obtain medical treatment for this condition since the alleged onset date, the undersigned concludes that [Plaintiff's] "idiopathic edema" was generally controlled with medication and did not cause more than minimal limitation in his ability to perform work-related activities during the period at issue.

---

[6] As Defendant correctly notes, the ALJ recognized at step five of the sequential analysis that, even if Plaintiff were limited to sedentary work, he could still perform jobs that exist in significant numbers in the national economy. (Tr. at 27, 92.)

Case 1:21-cv-00048-LCB-JEP   Document 16   Filed 08/24/22   Page 13 of 16

(Tr. at 21.) Nevertheless, as required by the regulations, the ALJ considered Plaintiff's edema and related treatment with diuretics when formulating Plaintiff's RFC. Regarding his diuretic use, Plaintiff testified that he "has to go to the bathroom over 20 times per day, which prevents him from performing activities for long periods." (Tr. at 23.) However, the ALJ ultimately found as follows:

> Although [Plaintiff] has alleged swelling of the legs and side-effects of diuretics that would either require him to elevate his legs or cause him to be off task or absent from work, those reported symptoms and alleged limitations are not consistent with the medical evidence, including findings on examination and treatment sought, or with [Plaintiff's] work and other activity. Even if the alleged symptoms and limitations may have been present briefly at some times during the period at issue, the record does not support a finding that they were present on an ongoing basis, even intermittently, such that [Plaintiff] could not have sustained full-time work.

(Tr. at 25.) In making these findings, the ALJ clearly considered all of the available evidence, including Plaintiff's statements about his symptoms, in evaluating "the intensity and persistence of the claimant's [symptoms], and the extent to which [they] affects [his] ability to work," in accordance with Craig, 76 F.3d at 595, and the factors set out in 20 C.F.R. § 416.929(c)(3) and 20 C.F.R. § 404.1529. The ALJ also pointed to Plaintiff's ongoing work activity, including reporting driving over 20,000 miles for business and engaging in other businesses, as evidence that Plaintiff's swelling and use of diuretics were not work preclusive. (Tr. at 24.) Because the ALJ explained her rationale for finding that the extent of Plaintiff's symptoms was not as limiting as alleged and, in doing so, explained why no further RFC limitations were required, the Court finds no basis for remand.[7]

---

[7] To the extent that Plaintiff's function-by-function challenge relies on the ALJ's alleged failures to (1) incorporate evidence submitted for the first time to this Court and/or (2) properly consider Plaintiff's lack of medical treatment, those arguments fail for the reasons set out previously in this Recommendation.

14

D. Regulatory framework

Finally, Plaintiff contends that "[t]he ALJ in this case cited the regulatory standards for evaluating symptoms, but not the standards for evaluating [RFC]." (Pl.'s Br. at 11.) Plaintiff therefore argues that the ALJ "committed a reversible error by relying on an incorrect regulatory framework to assess" Plaintiff's RFC. (Id.) In making this purely procedural challenge, Plaintiff does not cite any specific evidence omitted by the RFC. Instead, he relies on the Fourth Circuit's recent decision in Dowling v. Comm'r of Soc. Sec., 986 F.3d 377 (4th Cir. 2021), in which

> the ALJ relied on an incorrect regulatory framework when he assessed Appellant's RFC. He did not cite to 20 C.F.R. § 416.945, the section of the Code of Federal Regulations that is titled "Your residual functional capacity" and explains how ALJs should assess a claimant's RFC. Nor did he cite to SSR 96-8p, the 1996 Social Security Ruling that provides guidance on how to properly evaluate an RFC. Finally, the ALJ did not indicate that his RFC assessment was rooted in a function-by-function analysis of how Appellant's impairments impacted her ability to work.

Id. at 387. Here, despite Plaintiff's assertions to the contrary, none of the Dowling factors are applicable. The ALJ cited all of the relevant regulations (see Tr. at 20), assessed the RFC under the appropriate standards as set forth in subsection C of this Recommendation, undertook the relevant symptom evaluation using the two-step process provided in the regulations as set out above, and sufficiently explained her analysis.[8] Plaintiff essentially asks the Court to reconsider

---

[8] As reflected in subsection C, above, the lack of medical treatment notes and medical opinion evidence in Plaintiff's record largely reduce the RFC analysis in this case to little more than a symptom evaluation. However, nothing in the administrative decision or the record suggests that the ALJ failed to consider evidence relevant to Plaintiff's RFC or applied the incorrect standard in performing her RFC analysis, as in Dowling. Moreover, to the extent there is a lack of evaluations or medical opinion evidence in the record, the ALJ specifically noted that Plaintiff "did not cooperate with agency efforts to arrange for him to attend a consultative examination." (Tr. at 24, 118.)

15

and re-weigh the evidence presented. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ" Hancock, 667 F.3d at 472 (quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained her decision, and clearly explained the reasons for her determination. That determination is supported by substantial evidence in the record. Plaintiff has not identified any errors that require remand, and Plaintiff's Motion to Reverse the Decision of the Commissioner should therefore be denied.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 24th day of August, 2022.

/s/ Joi Elizabeth Peake
United States Magistrate Judge